## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

KEVIN LAMONT MARSHALL,       )
                                    )
         Plaintiff,             )
                                    )
         v.                    )            No. 4:21-CV-1500 RLW
                                    )
MICHAEL L. PARSON, et al.,       )
                                    )
         Defendants.       )

## <u>MEMORANDUM AND ORDER</u>

Self-represented plaintiff Kevin Lamont Marshall brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court upon the motion of plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $79.54. *See* 28 U.S.C. § 1915(b)(1).  After reviewing the pleading under 28 U.S.C. § 1915(e)(2), the Court will dismiss this action.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff is a convicted and sentenced state prisoner. In support of his motion to proceed without prepaying fees and costs, plaintiff submitted an inmate account statement showing average monthly deposits of $397.71. The Court finds that plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $79.54.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## The Complaint

Plaintiff, an inmate currently incarcerated at Jefferson City Correctional Center (JCCC), brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights that purportedly occurred when he was incarcerated at Missouri Eastern Correctional Center (MECC). Plaintiff names the following as defendants in this action: Michael L. Parson (Governor); Ann L. Precythe (Director of the Missouri Department of Corrections (MDOC)); Jeff Norman (Director of Adult Institutions); Richard Adams (Warden, MECC); James Hurley (Acting Warden, MECC); and Corizon Medical.[1] Plaintiff brings this action against defendants Michael L. Parson and Corizon Medical in their official and individual capacities. He has not alleged the capacities in which he is suing the remaining defendants.

Plaintiff complains that the MDOC transferred inmates to MECC in early July 2020, and "due to [the MDOC's] deliberate indifference," the MDOC failed to prevent the spread of Covid-19. He asserts that this transfer placed inmates in danger and spread Covid-19 to him and to other inmates at MECC.

Plaintiff additionally claims that Corizon is liable because the healthcare entity failed to properly screen prisoners being transferred to MECC prior to the prisoners being transferred to general population.

---

[1]Defendant Corizon Medical is the private corporation contracted to provide medical services to prisoners at MECC.

Plaintiff has attached his Informal Resolution Request (IRR) to his complaint, along with his Offender Grievance, the Grievance Response, his Offender Grievance Appeal, and the Grievance Appeal Response.[2]  In his IRR, plaintiff asserts that the MDOC sent out a memo at the start of the Covid-19 pandemic stating they were taking measures to prevent the spread of Covid in the prisons. Plaintiff claims that part of the MDOC Covid-19 "measures" were "all offenders coming in are screened by medical" and "keep them out of General Population until the offenders are medically cleared and symptom free."  Plaintiff does not cite to a specific memorandum or state statute relative to such measures.

Plaintiff complains that on July 7, 2020, the MDOC transferred in a group of inmates to MECC and, on July 9, 2020, another set of inmates were transferred into MECC.  Plaintiff states he believes transfers were supposed to have been suspended as of March 31, 2020.  However, he does not point to any statute or regulation relative to this contention.

Plaintiff claims that "[t]hose inmates was not tested nor quarantine[d] to keep outbreak from happening." He states that he was housed in 2D-08 and "they put RO's in the wing with us."[3] Plaintiff alleges that on July 21, 2020, one of the new inmates went to medical complaining of a stomachache and a headache, and that inmate and his cellmate were quarantined. Plaintiff states that the first inmate eventually tested positive for Covid-19.  Plaintiff alleges he was tested on July 24, 2020, but his results were negative, so he was "left on the wing" with the other inmates. Plaintiff does not indicate why he was tested or whether the entire wing was tested.  Plaintiff alleges that on August 3, 2020, he was tested again and was positive for Covid-19.

---

[2]Under Federal Rule of Civil Procedure 10(c), "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

[3]Plaintiff does not explain the meaning of term "RO's."

Plaintiff claims that while he had Covid-19 he had "really bad headaches, once" and stomach pain that "caused for a code sixteen to be called," but was told nothing could be done for him. [4]  Plaintiff also alleges his "muscles had locked up" and he "had to get a shot in my butt to release my muscles."  (ECF No 1 at 4.)  Plaintiff expresses concern over unknown medical issues he may have in the future as a result of having contracted Covid-19.

Plaintiff admits that as inmates tested positive, they were quarantined. He also admits that inmates were provided masks to wear but complains inmates were not required to wear them.

James Culbreath, Functional Unit Manager at MECC responded to plaintiff's IRR on September 10, 2020. He stated in part, "Missouri Eastern Correctional Center had no control over the incoming transfers that occurred July 2020 under extenuating circumstances."  (ECF No. 1-3 at 1.)

In a Grievance Appeal Response from Corizon Health, dated December 11, 2020, J. Cofield of Constituent Services informed plaintiff of the following:

> I understand your one original IRR complaint to be, "You contend that you became Covid 19 positive due to Corizon Health failing to test, screen or quarantine offenders transferred to Missouri Eastern Correctional Center."
>
> Upon review of your medical record, grievance records and investigation of your concern, I found that Corizon·Health has been testing any and all offenders, with symptoms that meet the Covid protocol. Please note Corizon Health does not make the decisions or have a choice regarding any transfers into MECC, or any other site. It is noted that Corizon Health additionally decide [sic] when any type of mass Covid 19 testing is performed. As noted, housing assignments, for offenders has always been performed only by DOC /custody officials. You are encouraged to continue to be an active participant in your healthcare, to wear a face covering when around others, to practice frequent handwashing, to follow the recommendations of the provider, and to continue with your current healthcare plan.

(ECF No. 1-4 at 22.)

---

[4]Plaintiff does not explain the meaning of the term "code sixteen."  In some of the grievance materials attached to the complaint, but not in the complaint itself, plaintiff states that he collapsed in his cell from the stomach pain.

Plaintiff seeks nominal and punitive damages in this action.

### Discussion

After careful review and liberal construction of the pleadings, the Court finds that plaintiff's complaint fails to states a claim for relief against any of the defendants as pleaded.

### I.      Official Capacity Claims Against Defendants

Plaintiff brings official capacity claims against the named defendants in this action.  As noted above, plaintiff expressly brings this action against defendants Michael L. Parson and Corizon Medical in their official capacities.  Plaintiff fails to allege the capacities under which he is suing the remaining defendants.  Where a "complaint is silent about the capacity in which [plaintiff] is suing defendant, [a district court must] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989).  Thus, the Court interprets the complaint as bringing official capacity claims against the individual defendants.  Plaintiff's official capacity claims are subject to dismissal.

### A. State of Missouri Defendants

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999). Here, except for defendant Corizon Medical, defendants are all employees of the State of Missouri.

Naming a state official in his or her official capacity is the equivalent of naming the government entity that employs the official – the State itself.  *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). "Section 1983 provides for an action against a 'person' for a violation,

under color of law, of another's civil rights." *McLean v. Gordon,* 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71.  Plaintiff's official-capacity claims are barred because he fails to name defendants that are suable under § 1983.

In addition, in the absence of a waiver, the Eleventh Amendment bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.,* 147 F.3d 741, 744 (8th Cir. 1998); *see also Andrus ex rel. Andrus v. Ark.,* 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment."). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart,* 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on a non-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *see also Webb v. City of Maplewood,* 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court."); *Dover Elevator Co. v. Ark. State Univ.,* 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court."); *Egerdahl,* 72 F.3d at 618-19 ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." (internal quotation and citation omitted)).

Plaintiff's official-capacity claims against the State of Missouri defendants are also barred by sovereign immunity.

### B.  Corizon Medical

Plaintiff alleges that Corizon Medical is liable for damages in its official capacity, but plaintiff has not alleged a specific policy by Corizon Medical that caused his purported injuries.

A corporation acting under color of state law will be held liable under section 1983 only for its own unconstitutional policies or actions.  *Sanders v. Sears Roebuck and Co.*, 984 F.2d 972 (8th Cir. 1993).  "The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983."  *Id.* at 976.  Thus, to state a viable claim against Corizon for an injury caused by an unconstitutional policy, plaintiff must allege facts indicating a Corizon doctor or nurse acted pursuant to an official Corizon policy, and the official policy is responsible for plaintiff being denied constitutionally adequate medical care.  Plaintiff has not done so in this case.

Plaintiff does not identify a Corizon policy, custom, or practice that caused his injuries. He states only that Corizon failed to "properly screen" prisoners being transferred to MECC prior to their being transferred to general population.  Plaintiff admits that inmates were tested if they reported feeling sick and quarantined if they complained of feeling sick. He also admits inmates were given masks to wear.[5] Plaintiff's main complaint appears to be the fact that the transfers to MECC occurred in the first place.

Vague and conclusory allegations that plaintiff's injuries were caused by some unidentified, unconstitutional policies are insufficient to state actionable *Monell* claims.[6] *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of a *Monell* claim where the plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the

---

[5]This Court has held the fact MECC is engaged in "separating and quarantining COVID positive patients indicates that the [institution] is not being deliberately indifferent to the needs of the inmates that are not positive."  *Engel v. CO1*, No. 4:20-CV-1908 CDP, 2021 WL 1198061, at *3-4 (E.D. Mo. Mar. 30, 2021).

[6]*Monell v. Dep't of Social Services,* 436 U.S. 658, 685 (1978).

alleged deprivation of the plaintiff's rights); *see also Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (to plead an actionable *Monell* claim, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation...cannot be conclusory; it must contain specific facts."). Plaintiff's disagreement with the transfer policy implemented by the MDOC, which his filings indicate Corizon was not responsible for, cannot state a policy claim against Corizon. As a result, the complaint fails to state a claim upon which relief can be granted against Corizon.

## II.  Individual Capacity Eighth Amendment Deliberate Indifference Claims

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell,* 436 U.S. at 685. One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To survive initial review, a plaintiff must plead facts sufficient to state a plausible claim for deliberate indifference to serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995).  Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106.  Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference to a prisoner's serious medical needs. *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Instead, a prisoner must allege facts sufficient to indicate that he suffered objectively serious medical needs and that defendants actually knew of, but deliberately disregarded, those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*,

663 F.3d 336, 342 (8th Cir. 2011).   A prisoner may show deliberate indifference through an intentional delay in or denial of access to medical care. *Estelle,* 429 U.S. at 104-05.

### A.  Defendant Michael L. Parson

To be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

There are no allegations that Governor Michael L. Parson was personally involved in the actions and omissions complained of in plaintiff's complaint. As such, the allegations of the complaint fail to state a claim against Michael L. Parson.

### B.  Defendant Corizon Medical

Plaintiff also asserts an individual capacity claim against defendant Corizon Medical. However, plaintiff has not named an individual employee of Corizon Medical as a defendant in this action.  "A corporation acting under color of state law … will not be liable on a respondeat superior theory."  *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007) (citing *Sanders,* 984 F.2d at 975-76).  As stated above, to support a claim against a corporation like Corizon, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *Sanders*, 984 F.2d at 975-76 (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts an injury actionable under § 1983"). As the Court has found that plaintiff failed to allege a policy or custom of Corizon resulted in a denial of medical treatment, in violation of the Eighth Amendment, he has failed to state a claim for relief.

Even if plaintiff had properly named an employee of Corizon and sued that individual in their individual capacity, he would not state a claim for relief under the Eighth Amendment.  Here, plaintiff's main complaint is that he was exposed to Covid-19 when inmates were transferred to MECC in early July 2020.  Plaintiff states that after one of the newly transferred inmates reported that he had a stomachache and headache, approximately twelve to fourteen after the transfer, the inmate tested positive for Covid-19. Plaintiff claims that approximately thirteen days later, he tested positive for Covid-19. Plaintiff admits that inmates within his housing unit were tested several times during this time if they felt ill. He also acknowledges that the inmates who tested positive were quarantined, and inmates were given masks to wear. Nevertheless, plaintiff complains about the transfers into MECC which were initiated by the MDOC.

This is insufficient to state a claim of deliberate indifference. Plaintiff's facts do not plausibly show that Corizon's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). The facts alleged in the complaint indicate Corizon was attempting to contain the spread of Covid-19 by keeping people who were exhibiting symptoms quarantined, while also keeping them apart from people who did not have symptoms. Plaintiff acknowledges experiencing symptoms associated with Covid-19 and states he was placed in medical, in isolation, for that reason.

There can be Eighth Amendment liability for failure to take actions to halt the spread of a disease.  In this case, there is no indication Corizon failed to take precautions with regard to Covid-19. As the complaint alleges, when plaintiff showed symptoms of Covid-19, he was placed into isolation and received some medical treatment. Plaintiff also alleges that inmates were provided with masks and testing. These facts do not demonstrate deliberate indifference by Corizon.  *See, e.g., Ware v. St. Louis City Justice Ctr.*, No. 4:20-cv-01065-AGF, 2020 WL 7240445, *5 (E.D.

Mo. Dec, 9, 2020); *see also Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (explaining that the quarantining of "any inmate exposed to Covid-19 is strong evidence that [the defendants] are responding reasonably to the risk posed by the virus").

Finally, Plaintiff's complaint that he did not receive treatment for "bad headaches once" and for stomach pain while he had Covid-19 also fails to state a claim. Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. A prisoner must allege that he suffered objectively serious medical needs and that defendants actually knew of, but deliberately disregarded those needs. *Dulany,* 132 F.3d at 1239. A "serious medical need" is "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden*, 663 F.3d at 342. Plaintiff's allegations do not rise to the level of a serious medical need.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED.** *See* 28 U.S.C. § 1915.

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $79.54 by **April 1, 2022**. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding. *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 4] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that an appeal of this Memorandum and Order would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this <u>14th</u> day of March, 2022.


RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE